

Federal Communications Commission
Washington, D.C. 20554
Office Of General Counsel
445 12th St. S.W.
Washington, D.C. 20554
Tel: (202) 418-1740 / Fax: (202) 418-2819

July 17, 2014

John Ley, Clerk of Court
United States Court of Appeals
 for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Re:**  *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 13-14013

Dear Mr. Ley:

The Federal Communications Commission respectfully submits this letter brief in response to the Court's request of July 7, 2014. In that request, the Court asked for the FCC's position "on whether the [Telephone Consumer Protection Act (TCPA)] and its accompanying regulations allow a plaintiff to recover damages from a defendant who sent no facsimile to the plaintiff, but whose independent contractor did." As we explain, the answer is yes.

In its letter, the Court adverted to the FCC's May 9, 2013 declaratory ruling in *DISH Network*, 28 FCC Rcd 6574 (2013), *pet. for review dismissed*, *DISH Network, LLC v. FCC*, 552 Fed. Appx. 1 (D.C. Cir. 2014), which addressed questions regarding the availability of direct and vicarious liability for unlawful telemarketing calls under the TCPA. As the Court observed, the TCPA and the FCC's implementing regulations "use[] different language in describing facsimile transmissions and telemarketing calls."

The *DISH Network* ruling did not address or alter the treatment of facsimile transmissions under the TCPA or the Commission's implementing regulations. Under the terms of the statute and regulations, the recipient of an unsolicited facsimile advertisement may recover damages from a defendant that does not itself transmit the offending facsimile, if the defendant has hired an independent contractor to transmit facsimiles advertising the defendant's goods or services. Such liability does not depend upon the application of federal common law vicarious liability principles.

## BACKGROUND

**1. Statutory and Regulatory Background.** The Telephone Consumer Protection Act, Pub. L. No. 102-243, 105 Stat. 2394, codified at 47 U.S.C. § 227, contains an assortment of provisions designed to protect consumer privacy and prevent unwanted communications over telephone lines. Separate subsections of the statute address voice telephone calls and facsimile advertisements. Those subsections contain different language, and FCC rules implementing those provisions treat voice calls and faxes differently.

**a.** *Voice Telephone Calls*. The TCPA makes it unlawful, subject to certain exceptions, for any person within the United States to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice … without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Such artificial or prerecorded voice calls are commonly referred to as "robo-calls." The statute also authorizes the FCC to establish a national do-not-call registry that consumers can use to notify telemarketers that they object to receiving telephone solicitations. 47 U.S.C. § 227(c)(1)-(4). The FCC's implementing regulations provide – again, subject to exceptions – that no person or entity may "initiate any telephone solicitation … [to any] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

In identifying the party that "initiates" calls in violation of these robo-call and do-not-call-registry prohibitions, the Commission's rules distinguish between the "telemarketer" and the "seller." The Commission defines the "telemarketer" as "the person or entity that *initiates* a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(11) (emphasis added). By contrast, the "seller" is defined as "the person or entity *on whose behalf* a telephone call or message *is initiated* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(9) (emphasis added). Thus, for example, in the *DISH Network* context, DISH was the seller and its third-party telemarketers were the parties that initiated calls promoting DISH's satellite television services.

2

The *DISH Network* ruling arose in the context of primary jurisdiction referrals from TCPA litigation involving alleged violations of the robo-call and do-not-call prohibitions contained in the TCPA and associated FCC rules. In it, the FCC relied upon these regulatory definitions of "seller" and "telemarketer" to hold that the party that is directly liable for unlawfully "initiat[ing]" a robo-call or a call to a number on the do-not-call registry is the telemarketer that "takes the steps necessary to physically place a telephone call" and not the seller whose goods or services the telemarketer promotes. *DISH Network* ¶ 26; *see also id.* ¶ 27. But the Commission also ruled that although a seller is not *directly* liable for robo-call and do-not-call violations committed by its third-party telemarketers, the seller may nevertheless be *vicariously* liable for such violations under federal common law agency principles.[1] *Id.* ¶¶ 28-47.

      **b.** *Facsimile Advertisements*. The TCPA uses different language governing facsimile transmissions. Specifically, the TCPA prohibits the "use [of] any telephone facsimile machine … to *send*, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). In contrast with the Commission's construction of "initiate" in the robo-call and do-not-call contexts – where FCC rules describe the directly-liable call "initiat[or]" as the "telemarketer" that physically makes the call – the FCC defines the directly-liable "sender," for purposes of the TCPA's unsolicited facsimile advertisement prohibition, as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). In other words, under the plain text of that definition – and unlike the robo-call and do-not-call contexts – direct liability for sending an unsolicited facsimile advertisement attaches to the entity (defined as the "sender") whose goods or services are being promoted, and *not* generally to the entity that physically transmits the facsimile.[2]

---

[1] The *DISH Network* ruling addresses situations where a seller relies on third-party telemarketers; a seller could of course be directly liable if it acts as its own telemarketer.

[2] Under the FCC's rules, a party that transmits the unsolicited facsimile advertisement, but does not also meet the definition of "sender," may nevertheless be jointly and severally liable (along with the sender) "if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(4)(vii); *see Rules and Regulations Implementing the Telephone Consumer Protection Act of*

The FCC adopted the codified definition of "sender" in 2006. *Junk Fax Order*, 21 FCC Rcd at 3808 (¶ 39) ("We take this opportunity to emphasize that under the Commission's interpretation of the facsimile advertising rules, the sender is the person or entity on whose behalf the advertisement is sent."), 3822 (setting out codified definition of "sender"). That codification is consistent with the Commission's pre-existing uncodified interpretation that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd 12391, 12407 (¶ 35) (1995).

**2. The District Court Proceedings Below.** In the proceedings below, the plaintiff golf center (Palm Beach Golf) brought a private TCPA lawsuit against the defendant dental office (Sarris), alleging that Sarris had sent the golf center an unsolicited facsimile advertisement in violation of 47 U.S.C. § 227(b)(1)(C). *See District Court Order* at 10-11. The district court described the alleged link between defendant Sarris and the facsimile transmitted to the plaintiff golf center as follows: Sarris had "engaged an independent contractor" named Roberts to provide marketing services to his dental practice, giving Roberts "'free rein' to legally advertise the practice." *Id.* at 2. Roberts, in turn, allegedly contracted with an entity called Business to Business Solutions ("B2B"), which sold facsimile advertising services in the United States on behalf of a Romanian company called Macaw. *See id.* at 2-3. B2B/Macaw allegedly then transmitted the offending fax to the golf center. *See id.* at 3-4, 7-9, 11.

The golf center alleged that this link between Sarris and the fax was sufficient to create direct (as opposed to vicarious) liability on Sarris's part,

---

*1991*, 21 FCC Rcd 3787, 3808 (¶ 40) (2006) (*Junk Fax Order*). Such "high degree of involvement" by the party transmitting the facsimile may include "suppl[ying] the fax numbers used to transmit the advertisement," "mak[ing] representations about the legality of faxing to those numbers," or "advis[ing] a client about how to comply with the fax advertising rules." *Junk Fax Order*, 21 FCC Rcd at 3808 (¶ 40); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14131 (¶ 196) & n.724 (2003) (noting that requisite high degree of involvement by the party transmitting the fax may also include a "role in reviewing and assessing the content of a facsimile message").

4

because Sarris met the definition of "sender" under the FCC's rules and the fax advertisement was unsolicited. *Id.* at 14.

The district court granted summary judgment in favor of the defendant dental office. *Id.* at 33. The court rejected the golf center's direct liability claim, ruling that it could establish liability, if at all, only on the basis of vicarious liability. *Id.* at 12-13. In doing so, the court relied on the FCC's ruling, in *DISH Network*, that the "seller" generally is not directly liable for unlawful telemarketing calls initiated by third-party telemarketers on the seller's behalf. *Id.* The court acknowledged that *DISH Network* "specifically examined the meaning of the word 'initiate' as used in the [statutory] telemarketing prohibition … instead of the word 'send' as used in the [statutory] unsolicited fax prohibition." *Id.* at 13 n.13. The court also conceded that *DISH Network* "specifically addressed the [FCC's rule defining the] term 'seller' in the telemarketing context, not [the definition of] 'sender' in the fax context." *Id.* at 13 n.13. The court nevertheless appeared to find that the Commission's analysis in *DISH Network* regarding the absence of direct seller liability in the telemarketing context also applied to foreclose direct sender liability in the fax advertising context, and hence foreclosed direct sender liability by the defendant dental office. *Id.* at 12-13.[3]

## ARGUMENT

In holding "that a party is not directly liable" under the TCPA's prohibition against "send[ing]" unsolicited facsimile advertisements "unless it actually transmits a fax," the district court acknowledged the existence of, but did not cite or discuss, "pre-*DISH Network* decisions" to the contrary. *District Court Order* at 14; *see also Addison Automatics, Inc. v. The RTC Group, Inc.*, 2013 WL 3771423 at *4 (N.D. Ill. 2013) (direct TCPA liability available against party whose goods or services are advertised in fax transmitted by others); *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412, 415 (E.D. Mich. 2013) (same). The court

---

[3] The district court went on to conclude that summary judgment for the defendant also was warranted because Palm Beach Golf had not established a case for vicarious liability under common law agency principles, *District Court Order* at 14-23, and because the plaintiff lacked Article III standing to present its TCPA claims, *id.* at 23-29. This Court's July 7 Letter did not ask the FCC to address these bases for the district court's decision and we express no view with respect to those issues (nor to the factual disputes addressed in the parties' briefs).

determined, however, that the *DISH Network* ruling supplanted any prior precedent on the subject and compelled the conclusion that a party whose goods or services were promoted in an unsolicited fax transmitted by a third party could be held liable, if at all, only "under federal common law principles of agency for the actions of a third-party." *Id.* That holding was in error.

First, the *DISH Network* ruling applies only to liability for telemarketing calls and neither addresses nor alters the Commission's pre-existing regulatory treatment of unsolicited facsimile advertisements. As noted above, the FCC issued the *DISH Network* ruling in response to primary jurisdiction referrals from TCPA litigation involving alleged violations of the robo-call and do-not-call prohibitions. *See DISH Network* ¶¶ 5-23. Those provisions prohibit the "initiat[ion]" of certain robo-calls and calls to telephone numbers listed on the national do-not-call registry. *See* 47 U.S.C. § 227(b)(1)(B) (robo-call prohibition); 47 C.F.R. § 64.1200(c)(2) (do-not-call prohibition); *see* pp. 2-3, above. In clarifying which party incurs direct liability for initiating a call in that context, the FCC found guidance in its rules defining "telemarketer" as the party that "initiates" a telephone call and "seller" as the party "on whose behalf a telephone call" is initiated. *DISH Network* ¶ 27 (citing 47 C.F.R. § 64.1200(f)(11) & (9)). The Commission determined on the basis of those definitions that the party that incurs direct liability for "initiat[ing]" an unlawful call is the telemarketer that physically makes the call and not the seller on whose behalf a call is made. *Id.* ¶¶ 26-27.

Because facsimile advertisements were not at issue in the *DISH Network* proceeding, the FCC had no occasion to opine on direct or vicarious liability in that context. Thus, nowhere in the *DISH Network* ruling does the FCC address the distinct prohibition against "send[ing]" unsolicited facsimile advertisements under 47 U.S.C. § 227(b)(1)(C), or the distinct definition of "sender" in the agency's rules (47 C.F.R. § 64.1200(f)(10)). The district court therefore improperly relied on the *DISH Network* ruling to hold that direct liability by the defendant dental office was foreclosed.

Second, as described above (at pp. 3-4), the FCC has defined the party that incurs direct liability for "send[ing]" an unsolicited facsimile advertisement under 47 U.S.C. § 227(b)(1)(C) very differently from the party that unlawfully "initiate[s]" a robo-call or do-not-call violation. By its plain terms, 47 C.F.R. § 64.1200(f)(10) defines the direct liability-incurring "sender" *not* as the party that physically transmits the fax, but as "the person or entity *on whose behalf* a

6

facsimile unsolicited advertisement is sent *or whose goods or services are advertised or promoted in the unsolicited advertisement.*" (Emphasis added.) Read in light of that binding regulatory definition,[4] the unsolicited fax prohibition in section 227(b)(1)(C) clearly "allow[s] a plaintiff to recover damages [under a theory of direct liability] from a defendant who [transmitted] no facsimile to the plaintiff, but whose independent contractor did," July 7 Letter at 1, so long as the transmitted fax constitutes an unsolicited facsimile advertisement promoting the defendant's goods or services.

## CONCLUSION

For the foregoing reasons, the district court misapplied the TCPA, the *DISH Network* ruling, and FCC regulations regarding unsolicited facsimile advertisements to the extent that it ruled, as a matter of law, that the defendant dental practice may not be directly liable under the TCPA for any unsolicited facsimile advertisement sent to the plaintiff golf center unless the defendant actually transmitted the fax.

Respectfully submitted,

*/s/ Laurence N. Bourne*

Jonathan B. Sallet
General Counsel
David Gossett
Acting Deputy General Counsel
Richard K. Welch
Deputy Associate General Counsel
Laurence N. Bourne
Counsel

---

[4] As the district court otherwise acknowledges, courts in non-Hobbs Act proceedings such as this one "must apply" – and may not entertain collateral attacks on – a final order or regulation of the FCC in deciding an issue addressed by such order or regulation. *District Court Order* at 13 n.13 (citing 28 U.S.C. § 2342(1)). *Accord CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010); *Self v. BellSouth Mobility, Inc.*, 700 F.3d 453, 461-64 (11th Cir. 2012).

**In the**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

| | |
|---|---|
| PALM BEACH GOLF CENTER-BOCA, INC. | ) |
| APPELLANT, | ) |
| V. | ) No. 13-14013 |
| JOHN G. SARRIS, D.D.S., P.A. | ) |
| APPELLEE. | ) |

## <u>CERTIFICATE OF SERVICE</u>

I, Laurence N. Bourne, hereby certify that on July 17, 2014, I electronically filed the foregoing Letter Brief with the Clerk of the Court for the United States Courts of Appeals for the Eleventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Phillip A. Bock
Daniel J. Cohen
Bock & Hatch, LLC
134 N. Lasalle Street
Suite 1000
Chicago, IL 60602
*Counsel for:  Palm Beach Golf Center-Boca*

Ryan M. Kelly
David M. Oppenheim
Brian J. Wanca
Anderson Wanca
3701 Algonquin Rd
Suite 760
Rolling Meadows, IL 60008
*Counsel for:  Palm Beach Golf Center-Boca*

Gregory S. Weiss
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Blvd
Suite 200
Palm Beach Gardens, FL 33410
*Counsel for:  Palm Beach Golf Center-Boca*

Kevin D. Franz
William S. Reese
Lane Reese Summers Ennis & Perdomo, PA
2600 S. Douglas Rd
Suite 304
Coral Gables, FL 33134
*Counsel for:  John G. Sarris*

Michael Resis
Molly Arranz
Eric Samore
SmithAmundsen, LLC
150 N. Michigan Ave
Suite 3300
Chicago, IL 60601
*Counsel for:  John G. Sarris*


/s/ Laurence N. Bourne